Good morning, your honors. May it please the court, my name is Brooks Holland, counsel for Lionel Avery Denham. Seated at counsel's table is Michelle Trombley, a newly-admitted attorney to the circuit who's assisted me on this appeal. Welcome and congratulations. With the court's permission, I'll try to reserve two minutes for rebuttal. Just to save everybody time, I think we all understand that the government concedes error on the sentence matter where he was sentenced to five years of supervised release when it should have been three. So neither one of you needs to argue that if I understand the government's position correct. Is that correct? Okay, so we can focus on the other elements of the case. Thank you for clarifying, your honor. I'll proceed to the two suppression claims then, your honor. Mr. Denham's motion to suppress his videotaped interrogation and his motion to suppress evidence recovered from his residence under Franks v. Delaware. Your honor, one single theme informs both of Mr. Denham's suppression claims. By March 11, 2008, when Detective Len Carver applied for a search warrant to search Mr. Denham's residence, and by March 12, 2008, when Detective Carver arrested Mr. Denham and along with Detective Megan interrogated him at the Seattle Police Department headquarters, Detective Megan had determined with conviction that Mr. Denham was his man in this series of bank burglaries that Detective Carver was investigating. Now, regardless of whether Detective Carver was correct in his conviction, he could not cross certain lines to acquire the evidence he wanted to make those charges stick. But the record makes clear that he crossed two very important lines. First, the evidence before the district court demonstrates that Detective Carver coerced a Miranda waiver and an interrogation from Mr. Denham when he interrogated Mr. Denham at the Seattle Police Department on March 12. Well, the district court conducted an evidentiary hearing and made factual findings. Correct. Which are inconsistent with your theory. So how do you get around those factual findings? Well, your honor, I would say that the district court began by noting that this was a close case, a very close case, Judge Lesnik commented, and indicated that there would be a substantial issue for appeal. And he concluded in his factual findings that, in his opinion, the case fell on one side of that line in a close case. That the questioning by Detective Carver, particularly his threats to arrest a father figure to Mr. Denham, Mr. Fisher, did not coerce Mr. Denham's implied Miranda waiver through confession or the confession itself. And we would argue that the court erred in that determination. Can I ask you, unless you have a follow-up question? Well, the follow-up is just, I think the district judge was very candid that he was struggling, but he made the factual findings that he made. And obviously, as long as there's substantial evidence to support those findings, we're stuck with them. Unless there was an error of law. Is that correct? I would say yes, there was an error of law. Really, these are mixed questions of fact and law. Where's the error of law? What was the misapplication of the law by the district court? There's really no dispute about what happened during the interrogation. It's videotaped, and the videotape has been submitted to the court as a supplemental exhibit. So we don't have an argument that the court made incorrect factual findings, so much as the court, in applying the law of voluntariness, misunderstood or weighed those factual findings incorrectly relative to the ultimate question, one of coercion. I'm trying to distinguish, and I don't want to monopolize this, but he made very explicit factual findings. This is not a record that's hard to figure out. There was a pretty clear statement of decision. So what's the legal error? The legal error is when the court decided that notwithstanding these very explicit, repeated, and forceful threats to arrest Mr. Fisher, to prosecute him for a gun, and potentially even the bank burglaries themselves, that he would go to prison and would go away if Mr. Dena did not cooperate, that these threats did not overcome the will of Mr. Dena. But that's a factual finding. Well, Your Honor, the standard review is one of de novo because these questions of voluntariness in the circuit are viewed as a mixed question of fact and law. So I think it is hard to segregate the two questions between factual findings and conclusions of law. And I'm arguing to the court that the district court, in thinking about the ultimate legal question of coercion and voluntariness, both in terms of the Miranda waiver and the substantive confession, misweighed these facts in thinking about the government's heavy burden of proving voluntariness. These were very full-throated, forceful threats. Part of the equation is what impact they had on the defendant. And that was something the district judge also was in a better position to weigh than we are. He had to decide what really affected the will of the defendant. Isn't that true? Yes. And he saw them, and he... I mean, you're asking some very difficult determination, just abstractly. Yes, Your Honor, I appreciate that. Facts. Does it make any difference under the case law, starting with Miranda, that your client had six previous felony convictions and a number of misdemeanors, had a college degree in chemical engineering, says he understands the system, he's sophisticated, he knows his rights, does that make any difference in terms of the totality of the circumstances and what deference we should give to the district court's findings that will observe the demeanor, et cetera, et cetera? I do believe those facts make a difference in the totality of circumstances, Your Honor. The difference is that it demonstrates the coercive influence of the threats from Detective Carver. The government has emphasized that Mr. Denham was an intelligent and strategic participant in this near-five-hour interrogation, which is all on video, so I would suggest that this court does stand in a pretty good position to review the circumstances. What are we to make of the fact that your client spent much of the interview trying to negotiate a deal for himself that he didn't want more than 51 months of incarceration? He also spent more time talking about his car than he did about Mr. Fisher. Should that have any bearing on our analysis? Yes, Your Honor. For the same reason, the intelligent, strategic engagement of Mr. Denham was why Detective Carver went to the threats. On page 163 of the excerpts of record, during the evidentiary hearing, Detective Carver said, I threatened to arrest Mr. Fisher to induce a confession, one that Mr. Denham was refusing to provide for more than two-and-a-half hours of this interrogation. The interrogation video demonstrates that the detectives progressively ratcheted up the pressure by focusing more on the threat to arrest Mr. Fisher because they were unsuccessful in getting Mr. Denham to relent. He was a strategic negotiator, and he was refusing to give the detectives what they wanted unless he got what he wanted. Does it make any difference that the detectives had probable cause to arrest Mr. Fisher independently because he was a felon and obviously then in possession of a firearm? The case law indicates that fact certainly is a relevant factor in the totality of circumstances, but it is one factor in the totality of circumstances. But that's one that we could easily weigh ourselves, though, could we not? If they came in and they just said, this guy, Mr. Fisher, we know he's a felon. We're going to take him out. Not kill him, but we're going to take him out, put him in the paddy wagon. And if they said nothing more about it, there would be no problem, would there? No, but they said much more than that, Your Honor. And again, the record goes far beyond that type of statement. First, the record is not limited to threats to arrest for a firearm for which the police had probable cause. They threatened to imprison Mr. Fisher and said that he would go away, which exceeds the lawful authority of the police even when they have probable cause. The detective also threatened to arrest Mr. Fisher as complicit in the burglaries themselves. On pages 164 of the excerpts of record and in that area of the transcript, Detective Carver acknowledged he did not have probable cause or any factual basis to arrest for the burglaries. But moreover, Your Honor, the threats have to be weighed in the totality circumstance with any probable cause to arrest for the firearm charge. As the detectives encountered repeated resistance to a confession, at the 2 hour and 35 mark Detective Carver stops and says to Mr. Denham, Mr. Denham, I am a sorry sack of S-H-I-T. I'm going to do your father on the gun charge and he'll go to prison if you don't cooperate. He will go away. I'm a hardcore kind of guy. Now, I'm not exactly sure what Detective Carver meant by that colorful language, but the only real implication is to suggest to Mr. Denham, we're done here. No more negotiating. And if you think I have the usual lines, they may not apply to me. I'm a hardcore kind of guy. I will get what I want. To get back to what Judge Fogle mentioned earlier, and for that matter what Judge Noonan mentioned, you're asking three appellate judges to look at the cold record, and I admit we've got videotape here, but to look at a cold record and in effect on a mixed question of fact and law to basically ignore the findings of the district court. Is that correct? I'm not asking the court by any means to ignore the findings of the district court. In fact, I'm asking the court essentially to respond to the district court's ultimate decision. The district court said this is a very close call. But he made a call, and as both of my colleagues mentioned, he made two specific determinations after having waited. And I'm getting the impression that you're saying, well, this whole thing is de novo, it's mixed fact and law, but it's de novo, and you've got to make this decision de novo. And in effect, ignore the findings of the district court. I just want to be sure I understand that that's your position. Ignore is not the word I would choose. How would you describe it? I would say review carefully the findings of the district court, including the district court statement that almost amounted to an invitation of appellate review of what he characterized as a very close call, and consistent with the de novo standard, look closely at the entire record, including the district court's findings, and we would argue that the line had been crossed and this case should fall on the other side of the line on the question of coercion and voluntariness because of the very explicit, repeated, and forceful threats here. If I'm hearing you correctly, it's the conduct of the officers was so egregious that it doesn't matter what Mr. Denham was thinking or what was in his mind or why he consented to confess. It's that the conduct per se as a matter of law was beyond the pale of Miranda. That's the only way I can get to where you're asking me to go, I think. Is that really what your argument is? I think it would be hard to make that argument consistent with the totality of circumstances test that's required on both prongs of the argument. Then why are we not required to defer to Judge Lasnik's factual determinations as to what was in Mr. Denham's mind? Because in this circuit, in cases like McShane and Tingle, the United States Supreme Court in virtually every jurisdiction has recognized that in the totality of circumstances, threats to arrest or imprison a family member  But you're saying the district court didn't weigh the totality of the circumstances the way that they should have been weighed. Correct. And I'm still trying to get a grasp just theoretically why that's the function of an appellate court, to re-weigh evidence. With the evidence that's available to this court through the videotape that shows this progression, about an hour of interrogation, the detectives get nowhere. The detectives introduce Mr. Fisher. You know, he has some explaining to do. He could be involved in this as well. About another 40 minutes, we get to about the hour and a half mark. Still no success getting a confession. The detectives say, it's Mr. Fisher or it's you. And the detective, Detective Carver now, moves his chair to pin Mr. Denham into a corner in the interrogation room. More interrogation, still no success getting a confession. Two hours and 35 minutes, I'm a hardcore kind of guy. You're going to confess or I'm going to do your father on the gun charge. At that point, the district court misweighed the available evidence and did not give sufficient weight to the impact of that purposeful threat. And that's a legal concept that you're arguing? It's a legal concept that is mixed with the factual record requiring de novo review. But ultimately, as Fogle has indicated, you're saying that we should take the factual determination out of the hands of the district court and make it ourselves? Correct. Are we obliged to look at the video from your perspective? Or can we look at the written record alone? I would argue that the court would not be in a good position with the available record to evaluate the arguments raised on appeal without viewing the videotape. The government has consented, as I understand, to a submission as a supplemental exhibit. And I think the government itself would ask the court to review this video in thinking about the totality of circumstances. Do you want to save any of your time? I do, thank you. Just one final point concerning the Franks motion, to be clear. It's up to you. It's your time. Thank you, Your Honor. The defense is not asking the court to rule on the merits of the Franks motion. We are simply asking this court to recognize that an evidentiary hearing is required where adversarial testing of the government's explanation of the omissions and misstatements in the affidavit could be held. Thank you, Your Honor. Thank you. We'll hear from the government. Good morning, Your Honors. Good morning. Bruce Miyake, on behalf of the United States. May it please the Court. The defendant has raised two issues, two suppression issues, as he mentioned, one related to the confession. And he raises two interrelated issues regarding that. One, was there a waiver? And secondly, and I think the most important, as this Court is focused on, is whether or not the statements were involuntary, whether they were coerced from the defendant. He also raises a Franks issue, claiming that the district court improperly denied him the right to an evidentiary hearing on that point. And our position is, with respect to the confession, that the district court Judge Lastnick correctly found, under the totality of the circumstances, which included the defendant's experience in long, long history, criminal history, his intelligence and his ability to handle the stress of the interrogation, that his confession was not coerced. That was the district court's specific finding, was it not? It was, Your Honor. It seemed to have weighed heavily on the district court's mind, that this was an experienced guy who had a lot of felonies, had a lot of experience, college education, which is a little unusual in this kind of a situation. What deference, if any, do we owe the district court's determination, under the totality of the circumstances, since it is a mixed question of fact and law? Well, as I understand the standard of review, this Court would look at, owes a great deal of deference to the Court's factual findings, in the sense that you would look at the record to see if there was some error in that finding. Was it not supported by the facts? Your opposing counsel says it's de novo, which basically is that we just, in effect, ignore what the district court did and start all over again on our own account. Is that the standard? No, I don't believe that to be the standard. I believe that the way that this Court reviews this is you apply a clear error standard to the factual findings. And what case law would you cite for that proposition? Your Honor, it... Please. It's cited in my brief, and I'm sorry I don't know that off the, on my fingertips. It's okay. But there...  Yes, Your Honor, if I could just have a moment. Sure. I would cite the Court to page 29 and 30 of my brief, where I set forth the standard where it says, the Court reviews the district court's legal conclusions regarding the waiver of Miranda and the finding of facts underlying those conclusions for clear error. Okay, and what's the case? It's United States v. Rodriguez, 518 F. 3rd, 1072. It's this Court's decision in 2008. And also United States v. Navarez-Gomez, 489 F. 3rd, 970. This Court's case decided in 2007. So clear error then? Clear error. Clear error for the finding of facts, and then de novo for the legal conclusions. Was there a misapplication of the legal standard here? And as I have argued, the court applied, the district court applied the correct legal conclusion. Which was the totality of the circumstances? The totality of the circumstances. And I believe correctly so. When you consider who the police were dealing with, it was a 43-year-old man who had, by this time, amassed five to six felony convictions. He had multiple contacts with the law. He was educated. He was intelligent. And throughout the interview, and I would invite the Court as well to review the DVD of the interview, it shows a very cagey, savvy individual who really handled himself quite well. Can I just ask one point of clarification? Yes. Although there's a reference to Mr. Fisher being his father or his dad, he really isn't his biological father, right? No. No. And, in fact, there was some dispute, if you will, about the nature of the relationship. Yeah. Does the record show what the real relationship is? Well, it was ‑‑ I'm not sure. I don't believe he was a blood relative. He was a landlord, but the defense ‑‑ Most people would not be upset having their landlord arrested. Well, not to the same ‑‑ I would agree. But not to the ‑‑ certainly he's not on the same footing as if this were his biological parent whom he was close with. Because you could have a biological parent whom you're estranged from and you have no relationship. But, clearly, this was a person whom he had some affection for. At least that's what he said. Now, the detectives ‑‑ I believe the detective mentioned during his testimony that, in talking to Mr. Fisher, he didn't view Mr. Denham at least in the same way. But even putting that aside, it was not a blood relative. And with respect to the use of the threat to arrest a family member or even a loved one, and Mr. Fisher would fall under the category of a loved one, the courts have ruled that that can be coercive. But there are a line of cases, the Sixth Circuit, the Fifth Circuit, and Eleventh Circuit, that have held that that is not coercive when the police have a good faith basis to do, which they had here. Do we have any case law that says to the contrary? In this circumstance where there's a loved one and there's a coercive argument, basically? Well, the defense cites some cases where they say that those cases were situations where the police threatened to arrest a family member, a sister, but they did not have probable cause to do so. And is the probable cause in this case, the fact that Mr. Fisher was a felon in possession, there was probable cause to arrest him for that? Yes. That that takes it out from under that line of cases to which you make reference? It does, Your Honor. It's not only that, but I would also say that you wouldn't stop there. You would still have to look at the totality of the circumstances. Because when you're dealing with tactics which could be called psychological ploys, the focus of the law is what impact did it have on the defendant? And if you, in reviewing the interview, it's clear that that was certainly, it was a concern, but it was not the primary concern. It was a factor. And because they raise it, and it's, well, they raise it several times, and they do ratchet it up. Whose burden is it here? Is it the government's burden to show there was no coercion, or is it the defendant's burden to show that there was? It would be the government's burden to prove by preponderance that it was, that there was no coercion. If we're defining coercion as overcoming the will of the person being. I'm glad you clarified that. There clearly was coercion here. The question is whether the coercion is what caused Mr. Denham to confess. You know, as I was thinking about the argument, there is a certain legal term of coercion, which would mean that it did overcome the will. Yes, there was coercion here. It was a hard tactic. It was a calculated tactic. But then the focus is, did it overcome the will of the defendant? And as Judge Lasnik, I believe, correctly found, you're dealing with a sophisticated, as he characterized, a career criminal. And the record bears that out. The point I was going to make is, even after they raise the potential for the arrest of Mr. Fisher, he doesn't crumble and say, okay, okay, I'll tell you what you want to know. In fact, he spends more of his time trying to negotiate a deal for himself. Then he kind of, and I think it's important to note that at that point, the detectives had laid out some of the evidence that they had acquired that they believed proved that he was the burglar. So he knew all this. And it was kind of like watching a cat and mouse, because they would say some evidence. He would try and talk around it. They would bring up another piece of evidence. He would try and talk around it. At some point, he felt that they had enough evidence, and it was he shifted from stonewalling to, hey, I need to make the best out of this situation here. And he spends more time asking about trying to get a deal for himself on his pending state case, as well as the potential cases he could be facing from the investigation. Well, the government takes a position that all of the conversation prior to the discussion about Mr. Fisher, in particular, the evidence that the government had about the bank and his M.O. and all that sort of thing, it was the cumulative pressure of that rather than Mr. Fisher that really put him over the top, and it did not break his will. That would be our position on that. It was the cumulative effect, as you pointed out. And the case law makes clear that it is not a but-for test, not but-for this, he would not have confessed. The focus, again, is on the state of mind for the defendant. Your Honor, just very briefly, as to the Franks issue, the district court correctly found that the defendant had not met the substantial preliminary showing that, number one, Detective Carver had intentionally included false information or recklessly included false information. What's the standard of review on the Franks determination? It's the same. Clear error? Clear error. Well, I just want to get clear on that. It's clear error as to whether there was a Franks violation. And then de novo. It's de novo as to whether the court applied the correct legal standard as to what the preliminary showing needed to be. That's correct. That's correct. And as we pointed out in our brief, and I'll end with this point, the district court found, properly so, that with the exception of one of the six allegations raised, none of it was false. And even if you were to find that that information was false, excising that from the search warrant, there was still ample probable cause based on the defendant's criminal history, the modus operandi used, and other pieces that tied him to this crime. Basically it was just an inadequate proffer and there was no need to go any further. That's correct. If the court doesn't have any further questions. I don't believe so. Thank you, counsel. Thank you very much. Rebuttal. While you're coming up, if you can be thinking about the standard of review in the Rodriguez case just cited by the government. They take the position that it's a clear error as a standard by which we review the district court's determination on the overbearing of your client's will. You say it's de novo. Who's wrong? I think it's a combination of both our positions, Your Honor. There are several standards of review that apply to a motion to suppress. Typically the district court's factual findings will be reviewed for clear error. The application of the law to those findings will be reviewed de novo. But I would refer the court to the first paragraph of Section A of my argument dealing with these voluntariness issues where I quote from this court's precedent that on questions of voluntariness, that specific issue before suppression court, the issues are mixed questions of fact and law, and therefore the standard of review is de novo on the finding of voluntariness. Whenever the standard is one that's viewed of mixed questions of fact and law, it can be confusing as to what type of deference should be applied. But I think what the message is here is that voluntariness of a waiver of rights or a confession is so important that the law asks this court to take a fresh look at that record, and the court here has a substantial record that it can consider, including the videotape, to ensure that the ruling was correct. And Judge Olesnik did indicate this is a very close call, so I believe he's invited the court to engage exactly that type of review. When your honors look at the videotape, you will see the substantial relationship here, not a but-for relationship, the government is correct, that is not the test, but the substantial weight of these threats on Mr. Denham's decision making. They overcame his resistance to confession. And that was the design, as Detective Carver himself testified. Very good. We thank you for your argument, both counsel and the case of United States v. Denham. It's submitted.
judges: Noonan, M Smith, Cjj Fogel (N. Cal.), Dj